**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRUBHUB INC. AND TAKEAWAY.COM CENTRAL CORE B.V., PLAINTIFFS, <br><br> v. <br><br> THE KROGER CO. AND RELISH LABS LLC, DEFENDANTS. | CASE NO.: 1:21-cv-05312 <br><br> JUDGE CHARLES R. NORGLE <br><br> MAGISTRATE JUDGE JEFFREY I. CUMMINGS |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION</u>

# **TABLE OF CONTENTS**

I. STATEMENT OF FACTS ................................................................................................ 2

II. LEGAL STANDARD .................................................................................................... 6

III. ARGUMENT ................................................................................................................. 7

    A. Home Chef is Likely to Succeed on the Merits of its Claims ............................... 7

        1. The Marks are Confusingly Similar ................................................................ 8
        2. The Services are Legally Identical ................................................................. 9
        3. The Marks Are Used Concurrently in the Same Area and Manner .......................... 10
        4. Degree of Care Likely to be Exercised by Consumers .................................... 11
        5. The HC Home Mark and the GRUBHUB Mark are Both Strong ............................ 12
        6. Actual Consumer Confusion Has Occurred .................................................... 12
        7. Plaintiffs Ignored Home Chef's Registered Rights ....................................... 13

    B. There Is No Adequate Remedy at Law and Home Chef Will Continue to Suffer
       Irreparable Injury in the Absence of Injunctive Relief ....................................... 14

    C. The Balance of Equities is Sharply in Favor of Home Chef ............................... 15

    D. An Injunction Would Serve the Public Interest .................................................. 15

IV. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

AutoZone, Inc. v. Strick,
    543 F.3d 923 (7th Cir. 2008) ............................................................7, 12

CAE, Inc. v. Clean Air Eng'g, Inc.,
    267 F.3d 660 (7th Cir. 2001) ............................................................9, 11

Eli Lilly & Co. v. Natural Answers, Inc.,
    233 F.3d 456 (7th Cir. 2000) ............................................................6, 14

Imperial Toy Corp. v. Ty, Inc.,
    No. 97 C 8895, 1998 WL 601875 (N.D. Ill. Sept. 9, 1998)..................13

Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.,
    128 F.3d 1111 (7th Cir. 1997) ............................................................8

Nike, Inc. v. "Just Did It" Enters.,
    6 F.3d 1225 (7th Cir. 1993) ............................................................11

Promatek Indus., Ltd. v. Equitrac Corp.,
    300 F.3d 808 (7th Cir. 2002) ............................................................15

Re/Max N. Cent., Inc. v. Cook,
    272 F.3d 424 (7th Cir. 2001) ............................................................14

Roland Mach. Co. v. Dresser Indus., Inc.,
    749 F.2d 380 (7th Cir. 1984) ............................................................15

Rust Env't & Infrastructure, Inc. v. Teunissen,
    131 F.3d 1210 (7th Cir. 1997) ............................................................11

Sands, Taylor & Wood Co. v. Quaker Oats Co.,
    978 F.2d 947 (7th Cir. 1992) ............................................................7, 9, 12

Sullivan v. CBS Corp.,
    385 F.3d 772 (7th Cir. 2004) ............................................................8

Ty, Inc. v. Jones Grp., Inc.,
    237 F.3d 891 (7th Cir. 2001) ............................................................6, 15

**Statutes**

15 U.S.C. § 1114(1) ...........................................................................................6

15 U.S.C. § 1115(a) ...........................................................................................7

15 U.S.C. §1116(a) ..........................................................................................14

Relish Labs LLC (known as "Home Chef") and The Kroger Co. ("Kroger", collectively "Defendants") file this memorandum in support of the motion for preliminary injunction to stop the infringement of Home Chef's registered trademarks by Takeaway.com Central Core B.V. ("Takeaway") and its subsidiary Grubhub Inc. ("Grubhub," collectively "Plaintiffs").

Shortly after it began its purchase of Grubhub for over $7 billion, Takeaway filed a trademark application at the U.S. Patent and Trademark Office ("USPTO") to register the "Takeaway Home" mark (right) in July 2020. The USPTO refused Takeaway's application "because of a likelihood of confusion with the marks in U.S. Registration Nos. 5241586, 5294674, 5598365, 5609448." Those are Home Chef's federally registered trademarks, and each includes the "HC Home" mark (right). Home Chef and Grubhub are competitors in the meal order and delivery business. From its startup in 2014, to its $1 billion in sales this past year alone, Home Chef has consistently used the HC Home mark while spending over $450M on advertising and marketing during that period.



**Infringing "Takeaway Home"**



**Federally Registered "HC Home" mark**

Takeaway did not rebut or appeal the USPTO's refusal. Having concluded its acquisition of Grubhub in June 2021, Takeaway instead withdrew its refused application on August 9, 2021 and rolled out "the updated branding in mid-August 2021." Dkt. 1 ¶28. For their infringement of the HC Home mark, Plaintiffs received a cease-and-desist letter from Defendants on September 7, 2021, refused to stop, and instead filed the Declaratory Judgment Complaint now pending before this Court. Dkt. 1, Ex. A. As the USPTO already determined, this infringement will continue to cause confusion with consumers having already found the marks confusing - one even inquiring about a merger between Home Chef and

Grubhub. Without an injunction, Home Chef will be deprived of control of its registered marks and valuable goodwill. The public will likewise be harmed if Plaintiffs are allowed to continue misleading consumers into believing there is an association between Plaintiffs and Defendants.

## I.    STATEMENT OF FACTS

Home Chef is a meal delivery company offering customers many meal options, including meal kits for preparing at home and ready-to-eat meals. Declaration of Patrick Vihtelic ("Vihtelic Dec.") ¶15, Ex. PV11. The current CEO Patrick Vihtelic started Home Chef in his Chicago apartment in 2013, built the company's first website, and personally delivered meals. Vihtelic Dec. ¶¶2,4, Ex. PV1. Home Chef grew rapidly, opening three distribution plants in Chicago, San Bernardino, and Atlanta, as sales expanded to over 97% of the country. Vihtelic Dec. ¶¶5-9, Exs. PV2-5. By June 2018, when Home Chef merged with Kroger, Home Chef had over $250 million in annual sales. Vihtelic Dec. ¶10, PV6-7. Last month, Home Chef reached $1 billion in annual sales. Vihtelic Dec. ¶13, Ex. PV10. Since its founding, Home Chef has provided over 200 million meals to more than 35 million customers and had more than $2.5 billion in sales in the United States. Vihtelic Dec. ¶14. Due to its high-quality services and products, Home Chef is a reputable, well-known brand throughout the United States. Vihtelic Dec. ¶¶25-30, Exs. PV20-24.

To strengthen its brand in 2014, Home Chef developed the HC Home mark, a mark it has used continuously in commerce since 2014. Vihtelic Dec. ¶¶19-21. Home Chef was granted five federal trademark registrations with the USPTO, three for the HC Home mark alone, without any limitation as to color. Vihtelic Dec. ¶22, Exs. PV15-19.

Home Chef uses the HC Home mark to advertise its products and services through many marketing channels, including online, social media, television, radio, email and direct mail ads, reaching a national audience of millions. Declaration of Shira Schwarz ("Schwarz Dec.") ¶¶3-14, Exs. SS1-6. Since 2014, Home Chef has spent over $450 million on marketing and advertising to

promote the brand and its meal delivery services. Schwarz Dec. ¶4. Home Chef's commercials all prominently feature the HC Home mark, reaching on an annual average 21 million households per week on broadcast television and 8.8 million households through online streaming platforms. Schwarz Dec. ¶¶12-13. Home Chef's social media pages prominently display and promote the HC Home mark. For example, Home Chef's YouTube channel has 84 million views (one commercial there has nearly 2 million views since March 22, 2021), its Facebook page has over half a million followers, and its Instagram page has 218,000 followers. Schwarz Dec. ¶¶7-10. Home Chef also sends about 30 million emails weekly and nationwide, prominently displaying the HC Home mark. Schwarz Dec. ¶14.

Home Chef often uses the HC Home mark alone, without the HOME CHEF word mark, in advertisements and on product packaging and also in an array of colors, including in orange and white, as shown below. Schwarz Dec. ¶¶15-16, Exs. SS7-8.



Home Chef also partners regularly with other brands, other sponsors, chefs, and influencers to promote Home Chef's products and services, using co-branding and joint advertising to expand their advertising and consumer reach. Schwarz Dec. ¶¶17-29, Exs. SS9-17.

3



Home Chef has consistently used the HC Home mark, invested hundreds of millions of dollars in widespread and substantial advertising and promotion of the mark, put it in tens of millions of homes weekly, and enjoyed significant and growing commercial success nationwide. The HC Home mark has acquired a high degree of distinctiveness and goodwill in the minds of consumers, especially those seeking meal selection and delivery.

Home Chef merged with Kroger, the famous retail grocery company, in 2018, further expanding the availability of Home Chef's products nationwide. Vihtelic Dec. ¶¶10-14, Exs. PV6-7. Kroger's family of stores includes over 2,700 supermarkets operated under at least two dozen store names throughout the United States. Declaration of Margaret Piedel ("Piedel Dec.") ¶2 (a), Ex. MP1. Through Kroger, Home Chef has been selling ready-to-eat meals, allowing customers to order dinner for same-day pick-up or delivery from Kroger stores nationwide through Kroger's website and mobile app. Vihtelic Dec. ¶¶11-16, Exs. PV8-10; Piedel Dec. ¶¶2(c)-(f), Exs. MP3-6. Consumers can also order Home Chef products for delivery through third-party services, like Instacart and DoorDash, a Grubhub competitor. Schwarz Dec. ¶34, Ex. SS21. Due to Home Chef's outstanding service, products, and marketing efforts, and with Kroger's support, the HC Home mark became indicative of a national leader in the food, food ordering, and delivery industry.

Like Home Chef, Grubhub provides at-home dining through meal delivery services offered to consumers online, including through a phone app. Piedel Dec. ¶2(u), Ex. MP21. Grubhub offers its meal delivery services nationwide through an array of channels, including through grocery stores and other retailers. Piedel Dec. ¶¶2(v), (x), Exs. MP22, 24.

In May 2013, Grubhub merged with a leading competitor, Seamless, and both have continued to offer meal delivery services under the GRUBHUB and SEAMLESS brands respectively. Piedel Dec. ¶¶2(h)-(i), Exs. MP8-9. Grubhub has acquired numerous competitors, relentlessly expanding its market share by buying meal delivery competitors. Piedel Dec. ¶(bb), Ex. MP28. Grubhub has even been accused in other cases of false advertising, deceptive trade practices, and trademark infringement, showing a pattern of reckless disregard for third-party intellectual property rights. Piedel Dec. ¶¶2(gg)-(ii), Exs. MP33-35.

Takeaway is a European online meal delivery company, operating under a number of different brand names abroad. Dkt. 1, ¶15; Piedel Dec. ¶2(z), Ex. MP26. Takeaway has a history of acquiring meal delivery competitors. Piedel Dec. ¶2(aa), Ex. MP27. Takeaway uses the Takeaway Home mark (shown above) around the world, often using the mark by itself in advertising, such as on bags and knapsacks and in sports arena. Piedel Dec. ¶2(g), Ex. MP7. Seeking to enter the U.S. market, Takeaway announced an agreement to acquire Grubhub in June of 2020. Piedel Dec. ¶2(cc), Ex. MP29. Grubhub's shareholders approved Takeway's acquisition of Grubhub for over $7 billion dollars on June 15, 2021. Piedel Dec. ¶2(dd), Ex. MP30. On July 1, 2020, Takeaway filed a U.S. trademark application for the Takeaway Home mark with the USPTO. Piedel Dec. ¶2(j), Ex. MP10. On January 6, 2021, the USPTO refused Takeaway's application due to a likelihood of confusion with Home Chef's registrations for the HC Home mark. Piedel Dec. ¶2(k), Ex. MP11. Instead of

contesting the USPTO's finding of confusion, Takeaway withdrew the application on August 9, 2021. Piedel Dec. ¶2(l), Ex. MP12.

Two weeks after being acquired by Takeaway, and days before Takeaway withdrew its U.S. application, Grubhub "premiered" its new Takeaway Home mark in Chicago. Dkt. 1, ¶28; Piedel Dec. ¶2(ee), Ex. MP31. Several weeks later, Grubhub appears to have launched a broader roll-out of its new branding with the Takeaway Home mark on August 24, 2021. Dkt. 1, ¶28; Piedel Dec. ¶2(ff), Ex. MP32. Home Chef sent a cease-and-desist letter to Grubhub on Sept. 7, 2021. Dkt. 1, ¶37, Ex. A. While Home Chef was open to finding a resolution, Grubhub refused to meaningfully cooperate and instead filed the Declaratory Judgement Complaint. Dkt. 1. Grubhub has meanwhile continued to use the Takeaway Home mark in a large, national advertising campaign in utter disregard for Home Chef's registered and valuable rights, causing confusion among consumers, harm to Defendants' businesses, and dilution.

## II.    **LEGAL STANDARD**

A preliminary injunction is appropriate where the movant establishes that: it has a "better than negligible" likelihood of success on the merits, no adequate remedy at law exists, and it will suffer irreparable harm if the injunction is not granted. Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 895 (7th Cir. 2001). When these threshold requirements are met, the Court weighs the factors on a sliding scale, assessing whether the balance of harms favors the moving party. Id.

To establish trademark infringement under the Lanham Act, one must show: (1) it owns a valid, protectable trademark; and (2) a likelihood of confusion caused by defendant's use of its mark. 15 U.S.C. § 1114(1); Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 461 (7th Cir. 2000). The Seventh Circuit uses seven factors to determine the likelihood of confusion: (1) similarity of the marks; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) any

6

evidence of actual confusion; and (7) the defendant's intent. <u>AutoZone, Inc. v. Strick</u>, 543 F.3d 923, 929 (7th Cir. 2008). No factor is dispositive. Courts may assign varying weight to each of the factors depending on the facts presented, though usually the similarity of the marks, the defendant's intent, and actual confusion are particularly important.

There are typically two theories of confusion: (1) **forward confusion**, which occurs when customers mistakenly think a new user's services or products (Grubhub's) are associated with the senior user's services or products (Home Chef's), and (2) **reverse confusion**, which occurs when a large junior user (Grubhub) saturates the market with a trademark similar to that of a smaller, senior user (Home Chef). In a reverse confusion case, the senior user is injured because consumers come to associate the senior user's products with the junior user, or because they come to believe that the two companies have become connected in some way, resulting in loss of value for the mark, control over its goodwill and reputation, and the ability to move into new markets. <u>Sands, Taylor & Wood Co. v. Quaker Oats Co.</u>, 978 F.2d 947, 957 (7th Cir. 1992). The factors to consider in a reverse confusion case are the same as those considered in forward confusion, except that two must be considered from a different point of view. <u>Id</u>. at 959. This case involves both theories.

## III.    ARGUMENT

### A.    Home Chef is Likely to Succeed on the Merits of its Claims

Home Chef's federal registrations for the HC Home mark constitute *prima facie* evidence of Home Chef's exclusive, nationwide ownership of the mark and Home Chef's rights pre-date any rights Plaintiffs may have in the Takeaway Home mark. 15 U.S.C. § 1115(a).

1.     **The Marks are Confusingly Similar**

The marks are virtually identical, both comprised

of a single fork and a single knife in the same positioning

and orientation within a house design, as compared above.

As the USPTO Examiner found when refusing



Takeaway's application based on a likelihood of confusion with Home Chef's registrations:

> In this case, both marks are comprised of a single fork and a single knife within the inside of a house design.  In addition, the positioning of the fork and knife are both the same with both the fork and knife facing in the same direction and with the fork being on the left and the knife on the right….
> In this case, the designs in [Takeaway's] mark and [Home Chef's] marks in the cited registrations are **highly similar**…. Thus, [Takeaway's] mark and [Home Chef's] marks…are **confusingly similar**. Piedel Dec., Ex. MP11 at 4 (emphasis added).

Plaintiffs' Complaint alleges that the two marks are distinguishable by consumers based

on differences in the design features, differences in color, and by adding words, such as Grubhub

or Seamless. These claims are at odds with the law and facts in this case.

First, marks must be considered as a whole and not side-by-side, as consumers are

unlikely to notice minor differences between marks when they are not encountered side-by-side

in the marketplace. Sullivan v. CBS Corp., 385 F.3d 772, 777 (7th Cir. 2004); Meridian Mut. Ins.

Co. v. Meridian Ins. Grp., Inc., 128 F.3d 1111, 1115 (7th Cir. 1997) ("it is inappropriate to focus

on minor stylistic differences to determine if confusion is likely."). Here, the marks are highly

similar in appearance, suggestion, and overall commercial impression, as the USPTO Examiner

found. The similarities outweigh any minor differences.

Second, Home Chef's registrations are registered

without claiming color, meaning they protect the mark in

any colors.  Home Chef uses its mark in an array of

 

colors, including orange and white like Plaintiffs. Schwarz Dec. ¶¶15-16, Exs. SS7-8.

8

Third, Grubhub's use of the Takeaway Home mark with the GRUBHUB word mark does not lessen the likelihood of confusion in a reverse confusion case. Grubhub touts the strength of its word mark. But the Seventh Circuit has noted that close association of a contested trademark with another's well-known brand name *increased* the likelihood of reverse confusion because it strongly connected the plaintiff's mark with the defendant's name. Sands, 978 F.2d at 958.

Home Chef also frequently partners with third parties on co-branded advertising, often using the HC Home mark alone with the third-party mark. Schwarz Dec. ¶¶17-29, Exs. SS9-17. Grubhub similarly uses the Takeaway Home mark with both its GRUBHUB and SEAMLESS brand names, while Takeaway frequently uses the Takeaway Home mark alone and in co-branded advertising campaigns as well. Piedel Dec. ¶¶2(g)-(i), Exs. MP7-9. With the marks being so similar, as the USPTO Examiner found, Grubhub's use of the Takeaway Home mark is likely to cause consumers to mistakenly believe that Home Chef is connected with Grubhub, or vice versa, and thereby increasing the likelihood of consumer confusion. As succinctly put by the USPTO Examiner, the marks are confusingly similar.

### 2. The Services are Legally Identical

The test for service relatedness is whether the two services "would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 679 (7th Cir. 2001) (quoting Sands, 978 F.2d at 958). Home Chef offers meals, including meal kits and ready-to-eat meals, and associated meal delivery services, including same-day, at-home delivery from Kroger stores nationwide. Vihtelic Dec. ¶¶11-16, Exs. PV8-11. In addition to offering their own delivery through the Home Chef and Kroger websites and mobile apps, customers can purchase Home Chef meals for same-day delivery through close competitors of Grubhub, including Instacart and DoorDash. Schwarz Dec. ¶¶34-35, Ex. SS21. Home Chef also

frequently markets its meal products and delivery services as a convenient alternative to restaurant takeout. Schwarz Dec. ¶33, Ex. SS20. Meal kit companies and restaurant takeout services are also often blurred together under the umbrella of meal delivery, targeting the same types of consumers for the same purpose, instant dinner. Schwarz Dec. ¶¶30-31, Exs. SS18-19.

Grubhub likewise offers meal delivery services, including from grocery stores. Piedel Dec. Ex. MP22. Per the test for relatedness, Home Chef's services and Grubhub's services are closely related, not only because both offer meal delivery services, but also because there is a particularly close relationship between prepared meals, on the one hand, and meal and grocery delivery services, on the other hand. In fact, Grubhub itself has sold Home Chef products. Piedel Dec. Ex. MP18.

> As the USPTO Examiner found:
>
> [Takeaway's] services, notably, "Services for providing food and drink; providing food and drink via mobile transportation, mobile vans, mobile trucks, mobile vehicles" is broadly worded and encompasses [Home Chef's] "providing personalized meal planning of meals that are delivered to individuals' homes for at home self-preparation meals" and "providing personalized meal planning of meals that are delivered to individuals' homes for at home self-preparation meals for nonprofessional cooks" services… Thus, [Takeaway's] and [Home Chef's] services are **legally identical** (emphasis added). Additionally, the goods and/or services of the parties … are "presumed to travel in the same channels of trade to the same class of purchasers…" Thus, [Takeaway's] and [Home Chef's] goods and/or services are **related** (emphasis added) ….
> Piedel Dec., Ex. MP11 at 4.

Consistent with the Examiner's findings, Home Chef's services and Grubhub's services are in fact legally identical, being at least related, as they both offer meal delivery and are targeted to the same consumers for the same purpose. In short, there is no legal distinction between delivered food and food delivery. This favors a finding of service relatedness.

### 3. The Marks Are Used Concurrently in the Same Area and Manner

In determining whether the area and manner of concurrent use between two marks is likely to cause confusion, several factors are important: (1) the relative geographical areas; (2)

whether the products are sold to consumers in the same type of store; (3) whether the products are sold in the similar section of a particular store; and (4) whether the products are sold through the same marketing channels. See Rust Env't & Infrastructure, Inc. v. Teunissen, 131 F.3d 1210, 1217 (7th Cir. 1997); Nike, Inc. v. "Just Did It" Enters., 6 F.3d 1225, 1230 (7th Cir. 1993).

Home Chef's meals and meal delivery services and Grubhub's meal delivery services are both sold nationwide. Vihtelic Dec. ¶¶7-14,16, 24-30; Piedel Dec. Ex. MP24. Both offer their services through retail grocery stores. Vihtelic Dec. ¶¶8-16; Piedel Dec. Ex. MP22. Both have gift cards sold directly alongside each other in the same section of stores. Piedel Dec. Ex. MP19. Grubhub has even sold Home Chef products. Piedel Dec. Ex. MP18. In addition, both advertise their products and services through the same marketing channels, including without limitation through Facebook, Instagram, Twitter and YouTube. Schwarz Dec. ¶¶6-12; Piedel Dec. Ex. MP17. Given such concurrent use of the respective marks in the same area and manner, it is clear that their marks will be, and have been, encountered by the same consumers, such that this factor favors a finding of likelihood of confusion.

### 4. Degree of Care Likely to be Exercised by Consumers

Consumers of inexpensive and widely accessible products are likely to exercise less care and discrimination in making purchasing decisions, thereby making confusion more likely. CAE, Inc., 267 F.3d at 683. Here, Home Chef's products are inexpensive, starting as low as $6.99 per serving. Vihtelic Dec. ¶15, Ex. PV11.  Similar products, including meal kits and prepared meals, are also widely available to consumers through grocery stores and subscription services nationwide. Consumers are therefore unlikely to exercise a high degree of care in deciding which brand of product to purchase for dinner.

Similarly, Grubhub's delivery services are inexpensive, typically ranging from $2.50-$7.50 per order. Piedel Dec. Ex. MP25 at 5. Many competing meal delivery services are also

widely available nationwide. Schwarz Dec. Ex. SS19. As such, consumers of Grubhub's services are likewise unlikely to exercise a high level of purchasing care. While Plaintiffs note Home Chef's subscription service of about $50 per week for delivery and meals, Grubhub also offers a monthly subscription service. Piedel Dec. Ex. MP23. The total costs of ordering takeout on a weekly basis are no higher. This factor therefore favors a finding of likelihood of confusion.

### 5. The HC Home Mark and the GRUBHUB Mark are Both Strong

The strength of a mark usually corresponds to its economic and marketing strength. AutoZone, Inc., 543 F.3d at 933. Here, Home Chef's HC Home mark is commercially strong. Home Chef has sold billions of dollars of products under the mark. Vihtelic Dec. ¶¶13-14, Ex. PV10. The HC Home mark is marketed to millions of consumers nationwide. Schwarz Dec. ¶¶3-14, Exs. SS1-6. Under the HC Home mark, Home Chef has received significant press coverage and accolades, including for its top customer service. Vihtelic Dec. ¶¶25-30, Exs. PV20-24. The USPTO has even recognized and enforced the strength of Home Chef's registrations for the HC Home mark. Piedel Dec. ¶¶2(k), (t), Exs. MP11, 20. Home Chef's HC Home mark is therefore strong as a mark, favoring a finding of a likelihood of forward confusion.

The strength of the GRUBHUB word mark, as alleged by Plaintiffs, also supports a finding of reverse confusion. Grubhub claims to be "among the most well-known brands in the United States." Dkt. 1, ¶7. If the GRUBHUB word mark is also a strong mark and, considering Grubhub's size, this factor favors a finding of reverse confusion. Sands, 978 F.2d at 947.

### 6. Actual Consumer Confusion Has Occurred

While evidence of actual confusion is not a requirement, such evidence is given great weight and is particularly important in finding a likelihood of confusion. AutoZone, 543 F.3d at 929. The independent third-party Trademark Examiner at the USPTO already determined a likelihood of confusion. Grubhub even acknowledged the likelihood of causing consumer

confusion when rolling out its new branding. Piedel Dec. ¶2(ff), Ex. MP32.

There are at least two instances of consumers confused by Grubhub's use of the Takeaway Home mark with Home Chef's HC Home mark, as shown below side by side, and the one on the right is a Home Chef customer. Schwarz Dec. ¶¶40-41, Exs. SS23-24.



Such instances of actual confusion, having arisen within a very short time after Grubhub started using the Takeaway Home mark, are strong evidence that there is a likelihood of further confusion between the marks if an injunction is not issued, favoring Defendants.

### 7.  Plaintiffs Ignored Home Chef's Registered Rights

While in a traditional forward confusion case, the inquiry is whether the junior user intended to palm off its goods as those of the senior user, in reverse confusion cases, "courts focus instead on whether the more well-known junior user ignored the senior user's rights." Imperial Toy Corp. v. Ty, Inc., No. 97 C 8895, 1998 WL 601875, at *6 (N.D. Ill. Sept. 9, 1998).

Having been refused by the USPTO and then withdrawing the application before rollout, Plaintiffs knew of and ignored Home Chef's registered rights. Such is Grubhub's *modus operandi*, as it has a history of making unauthorized use of third-party marks. Piedel Dec. Exs. MP33-35. As Takeaway has also shown, it will stop at nothing to get the Takeaway Home mark into new territory. Piedel Dec. Exs. MP26-27. Ignoring Home Chef's rights, Plaintiffs proceeded

13

to saturate the market with their use of the Takeaway Home mark, thereby favoring Defendants on this factor.

### B. There Is No Adequate Remedy at Law and Home Chef Will Continue to Suffer Irreparable Injury in the Absence of Injunctive Relief

This court has long applied a presumption that when a plaintiff sufficiently establishes trademark infringement, the plaintiff will suffer irreparable harm and has no adequate remedy at law absent an injunction. Eli Lilly & Co. v. Nat. Answers, Inc., 233 F.3d 456, 469 (7th Cir. 2000). That presumption was codified by the Trademark Modernization Act of 2020. 15 U.S.C. §1116(a). Home Chef has suffered irreparable harm and will continue to unless Plaintiffs are enjoined from using the mark. Home Chef spent significant time and resources advertising and promoting its products and services under the HC Home mark and there is confusion. As the USPTO foresaw, there are now at least two instances of actual confusion. That confusion will continue to grow while Home Chef irreplaceably loses customers' goodwill, not to mention potential new customers. Plaintiffs have many unsavory and negative reviews, due in part to their history of anti-competitive actions, acquiring competitors and killing their brands, and ignoring others' trademark rights, including those whose food it even delivered. Piedel Dec. Exs. MP27-28, 33-35 ("the growth of both Grubhub and DoorDash has been characterized by their willingness to use exploitative tactics to coerce restaurants to join and stay on the platform." Ex. MP35 at 11). Plaintiffs' large, ongoing, nationwide marketing campaign continues to erode consumer confidence and damage to Defendants' goodwill, which has been repeatedly found to constitute irreparable harm. Re/Max N. Cent., Inc. v. Cook, 272 F.3d 424, 432 (7th Cir. 2001). In the competitive meal delivery arena in which recognition drives market share, any corrective advertising in the future will be of no use. Without injunctive relief, Home Chef has no way to protect its registered marks and goodwill.

### C. The Balance of Equities is Sharply in Favor of Home Chef

The greater the likelihood of success on the merits, the less harm the moving party is required to show to obtain an injunction, and vice versa. Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir. 1984). While Home Chef will suffer irreparable harm without an injunction now, such relief will merely inconvenience Plaintiffs. Grubhub has long used the GRUBHUB and SEAMLESS marks to promote its services and, as Plaintiffs allege, GRUBHUB and SEAMLESS are well-known brands. The preliminary injunction sought is narrowly tailored to minimize any burden on Plaintiffs, requiring minimal effort to remove the mark from their website, social media, and marketing materials. The only conceivable harm to Plaintiffs in this case is monetary. "Having adopted its course…[Plaintiff] cannot now complain that having to mends its ways will be too expensive." Ty, Inc., 237 F.3d at 903. This course was adopted by Plaintiffs despite the rejection by the USPTO.

### D. An Injunction Would Serve the Public Interest

A preliminary injunction serves the public interest here by avoiding any possibility of confusion between the marks. Granting a preliminary injunction will also not harm the public because Grubhub's services will still be available regardless. Trademark laws exist to prevent consumer confusion, so the public is well served by the issuance of an injunction where confusion is likely. Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 814 (7th Cir. 2002).

## IV. CONCLUSION

Each factor favors a finding of a likelihood of both forward and reverse confusion – as the USPTO already found. Irreparable harm to Defendants will continue because Plaintiffs will not stop. Defendants therefore respectfully request an order granting a preliminary injunction requiring Plaintiffs to immediately cease all use, advertising, and promotion using the Takeaway Home mark until final adjudication on the merits of Defendants' counterclaims.

Dated: November 3, 2021                    Respectfully submitted,

                                           */s/ Shoba Pillay*
                                           Shoba Pillay
                                           JENNER & BLOCK LLP
                                           353 N. Clark Street
                                           Chicago, IL 60654-3456
                                           Telephone: (312) 923-2605
                                           Facsimile: (312) 527-0484
                                           spillay@jenner.com


Of Counsel:
William P. Atkins (**pro hac vice application pending*)
william.atkins@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
1650 Tysons Boulevard, Suite 1400
McLean, VA  22102
Telephone: (703) 770-7900
Facsimile: (703) 770-7901

Sam E. Iverson (**pro hac vice application pending*)
sam.iverson@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 983-1234
Facsimile: (415) 983-1200

***Attorneys for Defendants***
***The Kroger Co.***
***Relish Labs LLC***

**CERTIFICATE OF SERVICE**

I certify that on November 3, 2021, a copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION** was filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.


*/s/ Shoba Pillay*
Shoba Pillay