IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| GRUBHUB INC., and<br>TAKEAWAY.COM CENTRAL CORE B.V.,<br>Plaintiffs,<br><br>v.<br><br>THE KROGER CO. AND<br>RELISH LABS LLC,<br>Defendants. | CASE NO.: 1:21-cv-05312<br><br>Judge Charles R. Norgle |

## ORDER

Plaintiffs' objections [72] to the Report and Recommendation of the Magistrate Judge are sustained; the Report and Recommendation [57] is rejected; and Defendants' motion for preliminary injunction [17] is denied. Considering these rulings Plaintiffs' motion for leave to file reply [74] is denied because it is moot.

## MEMORANDUM OPINION

Before this Court is Plaintiffs', Grubhub Inc., and Takeaway.com Central Core B.V ("JET") (collectively, "Grubhub"), objections to the Magistrate Judge's Report and Recommendation (Dkt. 57) ("the R&R") to grant Defendants', Relish Labs LLC and The Kroger Co.'s (collectively "Home Chef"), motion for preliminary injunction. This matter was referred to the Magistrate Judge who issued the R&R, specifically recommending this Court grant the motion for preliminary injunction. Dkt. 57. In response, Grubhub issued written objections. Dkt. 72. Having reviewed the R&R, Grubhub's objections, and the extensive briefing on this motion, this Court is unpersuaded that Home Chef met its burden in establishing the need for a preliminary

Page 1 of 16

injunction, and therefore rejects the Magistrate Judge's recommendation and denies the motion for preliminary injunction.

## I. MARKS IN QUESTION

The Court adopts and incorporates the factual findings of the R&R; however, the Court refers to the marks in question as follows:

   

"JET House Mark"  "HC Home Mark"  "Grubhub House Logo"  "Home Chef Home Logo"

Grubhub has also combined the JET House Mark with the Seamless brand name to create the following logo:



"Seamless House Logo"

Dkt. 40 ¶19. Use of the Seamless House Logo will discontinue. Dkt. 56 at 9:14-16.

## II. DISCUSSION

### a. Review of Grubhub's Objections to The Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* determination of those portions or recommendations of the R&R to which Grubhub objects. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Id. Thus, the Court begins with addressing Grubhub's objections.

Grubhub objects to the recommendation to grant Home Chef's motion for preliminary injunction raising four specific objections. First, the R&R erroneously rejects Grubhub's consumer

perception surveys. Second, the R&R improperly relies upon a non-final USPTO decision that considered the JET House Mark and not the Grubhub House Logo. Third, the R&R fails to recognize that the use of the well-known GRUBHUB name in the Grubhub House Logo distinguishes that mark from the Home Chef Home Logo and makes confusion unlikely. Fourth, the R&R erroneously credits, as evidence of actual confusion, two anonymous social media posts inquiring about similarities between the Grubhub House Logo and the Home Chef Home Logo. The Court sustains each objection.

### i. Objection 1 – Erroneous Disregard of Consumer Perception Surveys.

Grubhub retained survey researcher Hal Poret to conduct surveys to assess whether Grubhub's use of the Grubhub House Logo causes consumer confusion between Grubhub and Home Chef under reverse and forward theories of confusion.[1] Dkt. 46-3. Both studies were in the standard "Eveready" survey format, "in which respondents are shown the trademarks at issue and questioned to determine if they make a mistaken mental connection to the other party's mark." Dkt. 46-3 ¶7; see 6 McCarthy on Trademarks and Unfair Competition § 32:173.50-174 (4th ed. 1999) (noting Eveready surveys are the "gold standard" in cases involving strong marks and are a "widely accepted" format to prove the likelihood or non-likelihood of confusion.) Poret opines that his survey results "powerfully demonstrate" that Grubhub's use of the Grubhub House Logo does not create a likelihood of confusion with Home Chef or its mark under either the reverse or forward confusion theory. Dkt. 46-3 ¶¶12, 14.

The R&R found that Poret's surveys, though admissible, were entitled to little weight for five reasons, concluding (1) the reverse confusion survey did not use the proper universe of consumers; (2) the surveys failed to accurately reflect the actual marketplace conditions; (3) the

---

[1] Trademark confusion is often discussed in terms of two different theories of confusion: "forward confusion" and "reverse confusion." See Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947 (7th Cir. 1992)

methodology used to question the survey respondents amounted to a "memory test;" (4) the surveys failed to use control groups; and (5) due to the limited time for which the parties' logos coexisted, the lack of actual confusion is "less salient" or even "irrelevant" when determining whether there is a likelihood of confusion. Dkt. 57 at 41-45.

Grubhub has objected to that weighing of the survey evidence. Dkt. 72 at 2; 4-9. The Court sustains that objection. The survey evidence produced by Grubhub (and, to a lesser extent, the failure of Home Chef to produce survey evidence to the contrary) is entitled to much more weight than was afforded it. In both the forward confusion and reverse confusion surveys, none of the hundreds of respondents were confused, demonstrating that confusion is unlikely. Dkt. 46 at 3 ¶¶11, 13. Survey evidence showing confusion of less than 10% weighs strongly against a finding of infringement. Henri's Food Prod. Co., Inc. v. Kraft Inc., 717 F.2d 352, 358-59 (7th Cir. 1983). The Court does not, as some courts have, draw the negative inference that Home Chef failed to offer survey evidence because such evidence would have been unfavorable to its claim. See e.g. Planet Hollywood (Region IV), Inc. v. Hollywood Casino Corp., 80 F. Supp. 2d 815, 884 (N.D. Ill. 1999), opinion clarified, No. 96 C 4660, 1999 WL 1186802 (N.D. Ill. Dec. 9, 1999). However, Home Chef's failure to offer any significant evidence of actual confusion (as discussed in more detail below) – either directly or through surveys – demonstrates a lack of proof by Home Chef on the important element of actual confusion. Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1153 (7th Cir. 1994) (noting while failure to prove any actual consumer confusion militates against a finding of the likelihood of such confusion, it is ultimately a question for the finder of fact.) The absence of sufficient proof of any actual confusion when coupled with marks that are not dead-on similar is a blow to Home Chef's infringement claim.

The R&R unduly criticized the universe of survey respondents in the reverse confusion survey. Respondents for a reverse confusion study should be drawn from a universe consisting of the customer base of Home Chef. See, e.g., Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City, 383 F.3d 110, 120-21 (3d Cir. 2004). Here, the universe of respondents questioned was a subset of the entire Home Chef customer base universe. The survey didn't question any respondents outside Home Chef's customer base universe; the set of Home Chef customers "who used, or planned to use, an online or in-app service for delivery of home meal preparation kits or ready-to-eat meals" may also include Home Chef customers "who make in-store purchases or who purchase heat-and-eat meals would;" and Home Chef customers "who make in-store purchases or who purchase heat-and-eat meals" may not be any more (or less) susceptible to confusion. In other words, nothing suggests the survey asked the wrong people, that the survey did not ask the people who the R&R said it should have, or that the results would be any different if it did. While the survey is not perfect, it captured a sufficiently broad swath of Home Chef's customers, and therefore is a probative measure of the effect of the Grubhub House Logo on consumer behavior. Am. Nat'l Ins. Co. v. Am. Nat'l Inv. Advisors, LLC, No. 11-cv-4016, 2014 WL 6613342, at *16 (N.D. Ill. Nov. 21, 2014) (survey evidence "need not be perfect" to be admissible and considered).

The R&R's criticism of the surveys' simulation of marketplace conditions is not erroneous because it is correct that the surveys did not account for how consumers react to: (1) Home Chef's use of the HC Home Mark without the Home Chef brand name; (2) Home Chef's sales of its products in Kroger grocery stores; and (3) Grubhub's use of the Seamless House Logo. However, "the closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results." Bobak Sausage Co. v. A & J Seven Bridges, Inc., No. 07 C 4718, 2010 WL 1687883, at *5 (N.D. Ill. Apr. 26, 2010).

Marketplace realities are such that consumers will rarely encounter the HC Home Mark without the Home Chef trade name appearing in some form, whether at the point of sale or otherwise. Also, any confusion in the context of grocery stores is unlikely because Grubhub does not sell any products, in grocery stores or otherwise; it provides delivery services. Finally, the Seamless brand and logo are being phased out, and so consumers will not encounter the Seamless House Logo. Dkt. 1 ¶20; Dkt. 56 at 9:14-16. Thus, while the surveys did not account for these three conditions, the survey methods nevertheless closely mirror the situation in which the ordinary person would encounter the trademark and are due a proportionate evidentiary weight.

It is a mischaracterization to call the surveys a "memory test" because the surveys tested more than the "memory" of survey respondents; the surveys questioned whether *and why* respondents associated marks with companies not shown. R&R at 43-44. Discounting the survey evidence for being a "memory test" is unwarranted. Furthermore, the absence of a "control group" in the surveys has no significant impact on the results because the purpose of a control group is "to eliminate general background noise from the results" and there is no such "noise" data here. Chattanoga Mfg., Inc. v. Nike, Inc., 140 F. Supp. 2d 917, 928–29 (N.D. Ill. 2001). The lack (or existence) of a control group makes the survey results no less (or more) reliable in this instance because there is no need for a control group here.

The Court disagrees with the R&R's conclusion that, because the parties' logos have only coexisted for several months, the lack of actual confusion is "less salient" or even "irrelevant" when determining whether there is a likelihood of confusion. Dkt. 57 at 45. To the contrary, while the logos themselves only coexisted for a short period of time, the brands and their products have existed for years – Home Chef since 2013 and Grubhub since 2004. See Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 121 (1st Cir. 2006) (attaching substantial weight to a

trademark holder's failure to prove actual confusion only in instances in which the relevant products have coexisted on the market for a long period of time) (emphasis added); Aktiebolaget Electrolux v. Armatron Int'l, Inc., 999 F.2d 1, 4 (1st Cir. 1993) (finding lack of evidence of actual confusion significant because products had coexisted in the same market for roughly six years). Home Chef's products and Grubhub's services have coexisted for going-on-nine years and the competing logos have coexisted for nearly a year, yet there is no substantial evidence of actual confusion. Dkt. #46-4 at ¶16. For these reasons, the Court sustains Grubhub's first objection and affords the survey evidence its due weight in assessing the likelihood of confusion.

### ii. Objection 2 – Improper Reliance on a Non-Final USPTO Decision.

Home Chef asserts the marks in question are "virtually identical," both comprised of a single fork and a single knife in the same positioning and orientation within a house design. Dkt. 18 at 12. The R&R concludes that the parties' respective marks share common elements and that the minor stylistic differences are of far less significance and do not defeat the similarity created by the marks' common elements. Dkt. 57 at 22. In coming to this conclusion, Home Chef and the R&R rely, at least in part, on the USPTO's findings that the marks are confusingly similar. Dkt. 18-8, Ex. 11. For its part, Grubhub objects to the R&R's reliance upon a non-final USPTO decision that considered the JET House Mark (not the Grubhub House Logo), on an evidentiary record different from the record before this Court. Dkt. 72 at 2, 9-11. Home Chef and the USPTO's "Nonfinal Office Action" both compare the JET House Mark absent any accompanying context or brand name with the HC Home Mark and the Home Chef Home Logo. But Grubhub does not use the JET House Mark independently. Thus, any findings by the USPTO examiner are devoid of appropriate marketplace context and consider different evidence than what is before this Court, including the survey evidence, and therefore are entitled to little, if any, deference under these

circumstances. See Progressive Distribution Servs., Inc. v. United Parcel Serv., Inc., 856 F.3d 416, 426-27, 433 (6th Cir. 2017). That is not to say, of course, that a district court cannot look to the USPTO opinion to inform its conclusions on trademark analysis, but rather that it is inappropriate here. Id. The Court sustains Grubhub's objection and agrees that reliance on the USPTO's initial refusal of Grubhub's application to register the JET House Mark to assess the likelihood of confusion is erroneous. R&R at 22-24, 46-47.

### iii. Objection 3 – Erroneous Disregard of Inclusion of Brand Names.

Grubhub asserts that the JET House Logo is always accompanied by the brand name "Grubhub." Dkt. 72 at 1. Home Chef claims this is untrue. Dkt. 73 at 3. There is no evidence before the Court that Grubhub has used the JET House Mark absent the brand names "Grubhub" or "Seamless" within the United States. Also, the Seamless brand and logo are being phased out, and so consumers will not encounter the Seamless House Logo. Dkt. 1 ¶20; Dkt. 56 at 9:14-16. Thus, the Grubhub House Logo, not the JET House Mark, is the true "accused mark."

Grubhub asserts that any confusion that might be created by the similarity between the HC Home Mark and the JET House Mark is neutralized because only the Grubhub House Logo is used and the use of the well-known "Grubhub" brand name distinguishes the Grubhub House Logo from the Home Chef Home Logo. Dkt. 72 at 12. The R&R disagrees, concluding "Grubhub's use of its brand name with the JET House [Mark] does not neutralize – and may actually aggravate – any confusion," reasoning that brand names help avoid confusion only in cases where forward confusion is alleged. R&R at 24-25. Grubhub's objection regarding this conclusion is sustained; nothing suggests inclusion of the distinctive "Grubhub" name aggravates confusion. It is well established that prominent display of different brand names with marks reduces the likelihood of confusion, "even where . . . the marks are otherwise similar." Ziebart Int'l Corp. v. After Mkt.

Assocs., 802 F.2d 220, 227 (7th Cir. 1986). Use of brand marks is "more likely to mitigate" reverse confusion than exacerbate confusion where, as here, both parties have well-established, highly-recognizable brand marks. Allstate Ins. Co. v. Kia Motors Am., Inc., CV 16-6108, 2017 WL 6550669, at *11 (C.D. Cal. Dec. 22, 2017), aff'd, 784 Fed. Appx. 507 (9th Cir. 2019). No evidence suggests that inclusion of the name "Grubhub" aggravates, rather than alleviates, potential confusion. The R&R's conclusion to the contrary is unfounded.

### iv. Objection 4 – Erroneous Reliance on Evidence of Actual Confusion.

Home Chef offers two instances which it claims are evidence of actual confusion. First, on September 8, 2021, a Home Chef customer sent Home Chef's Facebook account a message which read: "Did you and Grub Hub merge or come to some sort of mutual deal, because I had to take a double take today when my Grub hub app updated" (sic). Dkt. 57 at 36. Second, a Twitter user posted on August 25, 2021, "so uh why did grubhub make their app icon look like a stylized orange version of home chef...? Even the utensils look exactly the same" (sic). Dkt. 57 at 37.

Home Chef is not required to present proof of actual confusion to meet its burden or to otherwise prove that a likelihood of confusion exists. CAE, Inc. v. Clean Air Engineering, Inc., 267 F.3d 660, 685-86 (7th Cir. 2001). While situations where consumers raise questions about whether a senior user and a junior user are affiliated after viewing their respective marks are afforded some weight in assessing actual confusion, that weight is minimal. CAE, Inc., 267 F.3d at 686 (noting that the "one instance of actual confusion in the record" occurred when one of the plaintiff's suppliers asked whether there was a connection between the defendant and the plaintiff's subsidiary, but that instance was "not entitled to great weight"); Unity Health Plans Ins. Co. v. Iowa Health Sys., 995 F. Supp. 2d 874, 894 (W.D.Wis. 2014) (finding that a call where consumer

asked "whether Unity Health and UnityPoint are affiliated in some way" constituted "somewhat more persuasive" evidence of actual confusion than calls which "the court discount[ed] entirely.")

The instances which Home Chef cites as evidence of actual confusion are, at best, situations where consumers raise questions about whether a senior user and a junior user are affiliated. On their face, however, the consumers in these instances show they recognize a distinction between Grubhub and Home Chef. Comparison is not confusion, and these posts only compare the marks. That these are the only two incidents alleged of actual confusion after nearly a year of coexistence and millions of customers being exposed to both companies' logos weighs against a finding of a likelihood of confusion. This is compounded by the fact that Home Chef offers no survey evidence of actual confusion. Courts have recognized that, in the absence of proof of actual instances of confusion, it can be difficult to prove likelihood of confusion without survey evidence. See, e.g., Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999) (the plaintiff's "failure to present evidence of consumer confusion owing to [the defendant's] allegedly infringing conduct is telling.") For these reasons, the Court sustains Grubhub's objection that the R&R erroneously credits as evidence of actual confusion the two anonymous social media posts. The social media posts offer minimal evidence of actual confusion and are only "somewhat more persuasive" than no evidence at all. The absence of any other evidence of confusion, as well as survey evidence to the contrary, further diminishes the posts' probative value.

**b. Preliminary Injunction.**

Having sustained Grubhub's objections, the Court now considers whether a preliminary injunction is warranted. A preliminary injunction is a drastic remedy which is "never to be indulged in except in a case clearly demanding it." Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1044 (7th Cir. 2000) (cleaned up). To decide whether a preliminary injunction is warranted, courts

engage in a two-step inquiry involving a threshold phase and a balancing phase. See, e.g. Vendavo, Inc. v. Long, 397 F. Supp. 3d 1115, 1128 (N.D. Ill. 2019). First, Home Chef must satisfy its burden first at the "threshold phase" by establishing: (1) it is likely to succeed on the merits; (2) traditional legal remedies would be inadequate; and (3) it will suffer irreparable harm absent a preliminary injunction. Life Spine, Inc. v. Aegis Spine, Inc., 8 F.4th 531, 539 (7th Cir. 2021). Then, if Home Chef makes this showing, the court balances the harm of denying an injunction to the plaintiff against the harm to the defendant of granting one. Id. The ultimate decision in weighing and balancing these factors requires a high degree of discretion on the part of the district judge. Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314 (7th Cir.1994). The Court has expressed that "[a] preliminary injunction is an extraordinary remedy and should only be granted in a case where the movant has clearly carried his burden of persuasion as to all the prerequisites." Heinz v. Frank Lloyd Wright Found., 762 F. Supp. 804, 806 (N.D. Ill.1991) (Norgle, J.). Here, Home Chef has not carried its burden of persuasion as to the prerequisite that it is likely to succeed on the merits, and so the Court exercises its discretion to deny the extraordinary relief of a preliminary injunction.

Regarding the likelihood of success on the merits, the moving party "need not show by a preponderance of the evidence that [it] will win [its] suit." Protect Our Parks, Inc. v. Buttigieg, 10 F.4th 758, 763 (7th Cir. 2021). Nonetheless, "the mere possibility of success is not enough" and the movant must instead make a "strong" showing on the merits. Id. To establish trademark infringement under the Lanham Act, Home Chef must establish that: (1) it owns a valid, protectable trademark; and (2) there is a likelihood of confusion as to the origin of the defendant's product. Ty, Inc. v. Jones Grp. Inc., 237 F.3d 891, 897 (7th Cir. 2001). Here, there is no dispute that Home Chef owns a valid, protectable trademark. "The linchpin of both common law and federal statutory trademark infringement claims is whether consumers in the relevant market

confuse the alleged infringer's mark with the complainant's mark." AHP Subsidiary Holding Co. v. Staurt Hale Co., 1 F.3d 611, 615 (7th Cir.1993). Thus, the inquiry is whether consumers in the relevant market confuse the Grubhub House Logo with either the HC Home Mark or the Home Chef Home Logo; the answer is that it does not appear so.

The Seventh Circuit looks to seven factors when evaluating the potential for consumer confusion:

> (1) the similarity between the marks in appearance and suggestion;
> (2) the similarity of the products;
> (3) the area and manner of concurrent use;
> (4) the degree and care likely to be exercised by consumers;
> (5) the strength of the plaintiff's mark;
> (6) any actual confusion; and
> (7) the intent of the defendant to "palm off" his product as that of another.

Autozone, Inc. v. Strick, 543 F.3d 923, 929 (7th Cir. 2008). While no single factor is dispositive, the three most important factors are "the similarity of the marks, the intent of the defendant, and evidence of actual confusion." Eli Lilly & Co. v. Nat. Answers, Inc., 233 F.3d 456, 462 (7th Cir. 2000). Here, these most important factors – similarity, intent, and actual confusion – all favor Grubhub, and therefore, Home Chef has not met its burden of making a strong showing of a likelihood of success on the merits.[2]

### i. The Similarity Between the Marks in Appearance and Suggestion.

In an infringement action, a comparison of the marks at issue should be made "in light of what happens in the marketplace, and not merely by looking at the two marks side-by-side." AutoZone, 543 F.3d at 931. The test is not whether the public would confuse the marks, but whether the viewer of an accused mark would be likely to associate the product or service with

---

[2] The Court does not presently consider the remaining factors because Grubhub did not specifically object to the R&R's analysis of those factors, and it does not appear that the R&R's analysis of those factors is clear error. Moreover, that analysis would not change the Court's conclusion that Home Chef has not met its burden of showing a strong likelihood of success on the merits.

which it is connected with the source of products or services with which an earlier mark is connected, *i.e.* whether a viewer of the Grubhub House Logo would be likely to associate Grubhub's services with Home Chef's products. Id.

The Court relies not on the USPTO's determination, but on its own examination of the marks in question. Similarities between the marks are limited to a single fork and a single knife in the same positioning and orientation within a house or home design. Differences include the shape of the design – in the HC Home Mark, the design is a pentagon more resemblant of a baseball home plate than a house with eaves and a chimney, as is the case in the JET House Mark. Also, the HC Home Mark utilizes straight lines with pointed edges where the JET House Mark has rounded, cartoon-like edges. Finally, the knife and fork are recessed in the JET House Mark where they are integrated with the edges in the HC Home Mark. These differences are significant enough to differentiate the JET House Mark from the HC Home Mark. The Seventh Circuit adheres to the rule that "if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements." Ty, Inc. v. Jones Grp., Inc., 237 F.3d 891, 898 (7th Cir. 2001). When the JET House Mark is combined with the brand names "Grubhub" or "Seamless," the brand names become the more salient portion of the logo, further differentiating the Grubhub House Logo from the HC Home Mark and the Home Chef Home Logo.

Grubhub maintains that its brand names always accompany the JET House Mark. Grubhub objects to the R&R's discounting of the significance of this layout of the Grubhub House Logo. As noted above, the Court sustains that objection. The JET House Mark is but one portion of the Grubhub House Logo, which is the true "accused mark." Thus, while the HC Home Mark may at times stand alone, there is nothing to indicate that when it does, it will be associated with Grubhub, since the JET House Mark never stands alone. While the JET House Mark shares similar features

with the HC Home Mark, it is the less salient and obvious portion of the Grubhub House Logo. Thus, there is no indication that a viewer of the Grubhub House Logo would be likely to associate Grubhub's services with Home Chef or its products. The prominent display of different brand names on products otherwise containing similar marks reduces the likelihood of confusion. Ziebart Int'l Corp. v. After Mkt. Assocs., 802 F.2d 220, 227 (7th Cir. 1986); See also Ye Old Tavern Cheese Products, Inc. v. Planters Peanuts Division, 261 F.Supp. 200, 206 (N.D. Ill. 1966) (in some circumstances, "where the brand name is prominently stressed in the label, there is not likely to be any confusion as to the source, which is the essence of trademark infringement"), aff'd mem., 394 F.2d 833 (7th Cir. 1967) (per curiam). This factor weighs in Grubhub's favor given that Grubhub's use of its brand names with the JET House Mark minimizes any similarity between, and any potential confusion of, the competing marks.

### ii. The Intent of Grubhub to "Palm Off" Its Product as That of Another.

Grubhub asserts that it adopted the Grubhub House Logo in good faith to align its branding with the branding of its new parent company, which began using the JET House Logo overseas in 2014, and that it had no intent to pass off its services as originating from Home Chef. (Dkt. 46 at 23). Home Chef does not dispute this. Instead, Home Chef asserts that Grubhub ignored its rights by using the JET House Logo after the USPTO rejected JET's attempt to register the mark.

When evaluating whether a defendant acted in good or bad faith when adopting a mark, courts consider whether the alleged infringer is trying to steal "sales from a competitor by making consumers think they are dealing with that competitor, when actually they are buying from the passer off." Uncommon v. Spigen, Inc., 305 F. Supp. 3d 825, 863 (N.D. Ill. 2018). Since passing off is a type of fraud, the movant must show some evidence of the defendant's bad faith, as "the mere similarity of names" or "copying" are insufficient to satisfy bad intent. Id. (internal citations

omitted). A defendant's use of its brand name to promote that it is the source of its services or a "clearly stated designation of origin" weigh against a finding of an intent to palm off. Id. In a forward confusion case, the junior user's intent is relevant to the issue of likelihood of confusion if the junior user intended to palm off its products as those of the senior user. Sands, 978 F.2d at 961. In a reverse confusion case, where the junior user typically has no desire to capitalize on the senior user's good will, courts consider whether "the more well-known junior user ignored the senior user's rights" or otherwise "culpably disregarded the risk of reverse confusion." Imperial Toy Corp. v. Ty, Inc., No. 97 C 8895, 1998 WL 601875, at *6 (N.D. Ill. Sept. 9, 1998).

There is no evidence Grubhub intended to capitalize on Home Chef's good will or to palm-off its products as Home Chef's. In fact, JET began using the JET House Mark as early as June 2014, at or around the same time Home Chef publicized the HC Home Mark. Dkt. #46-5 ¶6; Dkt. #18-1 ¶19. Thus, beyond the USPTO report (which is entitled to little, if any, weight because it only compared the JET House Mark with the HC Home Mark), there is little evidence Grubhub ignored Home Chef's rights by utilizing the Grubhub House Logo, especially where JET began using that mark internationally at or around the time Home Chef began its use of the HC Home Mark. No evidence suggests Grubhub culpably disregarded the risk of reverse confusion. As such, this factor weighs in Grubhub's favor whether under a forward or reverse confusion theory.

### iii. Evidence of Any Actual Confusion.

The Court has examined this factor in its discussion of Grubhub's objections. To reiterate, the social media posts which Home Chef offers as evidence of actual confusion are of little probative value in establishing whether there is confusion between the Grubhub House Logo and the HC Home Mark or the Home Chef Home Logo. Furthermore, there is sufficiently strong survey

evidence which suggests there is zero confusion between the competing marks. As such this factor also weighs in Grubhub's favor.

### III. CONCLUSION

In light of the sustained objections, the most important factors in the likelihood of confusion analysis – similarity, intent, and actual confusion – all favor Grubhub. Home Chef has not made a sufficiently strong showing of a likelihood of success on the merits. This is not a case clearly demanding of the extraordinary remedy of a preliminary injunction. The Court rejects the R&R and denies Home Chef's motion for preliminary injunction.

IT IS SO ORDERED:

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: May 25, 2022