IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GRUBHUB INC., et al.,           )
                                )
                Plaintiffs,     )      Case No. 21-cv-5312
v.                              )
                                )      District Judge Franklin U. Valderrama
THE KROGER CO., et al.,         )
                                )      Magistrate Judge Jeannice W. Appenteng
                Defendants.     )
                                )

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendants' motion to compel plaintiffs' responses to
interrogatories and requests to admit, Dkt. 146, and defendants' motion to compel
third-party document production, Dkt. 148. For the reasons set forth below, the
motion to compel plaintiffs is granted in part and denied in part, and the motion to
compel a third party is denied.

## I.      Background

Plaintiffs Grubhub Inc. ("Grubhub") and Takeaway.com Central Core B.V.
("Takeaway") are "online food-ordering and delivery marketplace[s]." Dkt. 1 at 3-5.
Grubhub was founded in 2004 in the United States. Takeaway was founded in 2000
and is based in the Netherlands. *Id.* In 2013, Grubhub merged with Seamless, a
company that provides similar services. Grubhub maintains a Seamless brand to
date. In June 2021, Takeaway acquired Grubhub. Shortly thereafter, Grubhub
modified its logos to comply with Takeaway's branding guidelines. The new logos

feature Takeaway's house-and-cutlery logo (referred to as the "Takeaway Home Mark") with the name "Grubhub" or "Seamless" below or next to the house.

In September 2021, Grubhub received a cease-and-desist letter from defendants Relish Labs LLC and The Kroger Company (collectively, "Home Chef"). *Id.* at 15. Home Chef is a United States company that creates and delivers meal kits and provides other grocery delivery services. Dkt. 16 at 41-42. Home Chef owns several federal registrations for its logo "comprised of a fork and knife inside an outline of a house." *Id.* at 43. After receiving the cease-and-desist letter, plaintiffs filed their complaint seeking declaratory judgment that their logos did not infringe on defendants' trademark rights.

Discovery began in July 2024, after the District Judge denied defendants' motion for preliminary injunction and the Seventh Circuit affirmed. Dkts. 76, 93. The parties began to raise disputes early in the discovery process. On January 24, 2025, the Court held a status hearing concerning disputed requests for production, interrogatories, and requests for admission. The Court instructed the parties to "engage in a meaningful meet and confer" before filing a motion to compel interrogatory and RFA responses. Dkt. 140. The Court did not grant leave to file a motion to compel document production, instead directing the parties to meet and confer again and list outstanding disputes in a joint status report. Dkts. 140, 149. The parties evidently remain at an impasse. Defendants filed their motion to compel interrogatory and RFA responses, Dkt. 146, and the parties identified

approximately 40 disputed RFPs in their March 14, 2025 joint status report, Dkt. 160.

Defendants also filed a motion to compel document production from non-party Michael Maloney. Dkt. 148. Mr. Maloney is the founder and former chief executive officer of Grubhub. Dkt. 161-1. He resigned in 2021. After Takeaway acquired Grubhub, Mr. Maloney offered to buy Grubhub twice, once in 2022 and once in 2024. Takeaway did not accept his bids. Mr. Maloney attests that he has "not been involved in Grubhub's or Takeaway's business or operations since [his] departure" three years ago. *Id.* Nevertheless, defendants issued a Rule 45 subpoena, requesting Mr. Maloney produce all documents about his analysis of Grubhub, his offers to buy Grubhub, the trademarks at issue, Takeaway's acquisition of Grubhub, and other trademark allegations or cases against Grubhub. Mr. Maloney, represented by plaintiffs' counsel, objected to the requests and maintained he had no responsive documents in his possession, custody, or control.

## II. Legal Standard

Federal Rule of Civil Procedure 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F.Supp.3d 916, 924 (N.D. Ill. 2019) ("Relevance focuses on the claims and defenses in the case, not its general subject matter."). A party may compel discovery under Rule 37 whenever another party fails to respond to a discovery request, or when its response is insufficient. Fed. R.

Civ. P. 37(a). In the context of requests for admission, a party may move the Court for a ruling on the sufficiency of an answer or objection, and the Court may deem the matter admitted or order the responding party to amend its answer. Fed R. Civ. P. 36(a)(6); *Buchanan v. Chicago Transit Auth.*, No. 16-CV-4577, 2016 WL 7116591, at *3 (N.D. Ill. Dec. 7, 2016).

Rule 45 allows a party to subpoena documents and tangible things in a non-party's possession. Fed. R. Civ. P. 45(a)(1)(A). The scope of information discoverable under Rule 45 is the same as the scope available under Rule 26(b)(1), but the requesting party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1); *Sabuco v. Pecelunas*, No. 17-CV-9372, 2019 WL 13215194, at *1 (N.D. Ill. Sept. 17, 2019). To determine whether a subpoena imposes an undue burden, the Court considers whether (1) the request is relevant; (2) the requesting party has substantial need for the documents; (3) the request is overly broad; (4) the time period requested is reasonable; (5) the request is sufficiently particular; and (6) the non-party's compliance would, in fact, be burdensome. *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020).

Courts have "extremely broad discretion" in controlling discovery, *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013), and resolving discovery disputes, *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 785 (7th Cir. 2013). The party moving to compel discovery bears the initial burden to establish a request's relevance, then the burden shifts to the objecting party to show why the request is

4

improper. *See Mendez v. City of Chicago*, No. 18-cv-6313, 2020 WL 4736399, at *5, *8 (N.D. Ill. Aug. 14, 2020).

## III. Analysis

### A. Defendants' Motion to Compel Plaintiffs' Discovery Responses

#### i. Scope of Relevancy

Prior to evaluating defendants' various discovery requests, the Court must establish the bounds of relevancy. To prove trademark infringement under the Lanham Act, defendants must establish that (1) it owns a valid, protectable trademark, and (2) there is a likelihood of confusion as to the origin of defendants' products. *Ty, Inc. v. Jones Grp. Inc.*, 237 F.3d 891, 897 (7th Cir. 2001). There is no dispute that defendants own a valid, protectable trademark; thus, the case turns on whether consumers in the relevant market confuse plaintiffs' and defendants' marks. The Court considers seven factors when evaluating potential consumer confusion: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the mark; (6) any actual confusion; and (7) the intent of the alleged infringer to "palm off" its product as that of another. *Autozone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). Defendants argue that plaintiffs' international business and use of the mark abroad is relevant to the seven factors. However, "trademark law is territorial," and the Lanham Act applies to infringing use only in domestic commerce. *Abitron*

*Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412 (2023). With these principles in mind, the Court will address defendants' discovery requests in turn.

### ii. Interrogatory No. 4 to Plaintiff Takeaway

> Interrogatory No. 4: Describe how you have used and controlled the use of the Takeaway Home Mark alone or in combination with any other accompanying or allegedly distinguishing wording or designs, worldwide, including but not limited to what Entity is responsible for controlling such use and the nature and quality of goods and services sold, offered for sale, distributed, or rendered under or in connection with such mark.

Dkt. 146, Ex. J at 8. Plaintiff Takeaway responds that it "operates only in the Netherlands," but it uses a "single-brand identity in all 19 countries in which the Takeaway Home Mark is used" by issuing brand guidelines and monitoring its international subsidiaries. *Id.* at 8-11. Plaintiff elaborates that it expects subsidiaries to follow its guidelines and restrictions, it "regularly reviews templates and creative assets," and its information security team monitors online use of the mark. *Id.* Regardless of these efforts to promote "overall branding," plaintiff Takeaway clarifies that it "does not control the marketing campaigns of each of its international subsidiaries or know about each specific use of the Takeaway Home Mark." *Id.*

Defendants argue plaintiff's response is deficient because it does not adequately explain its control and use of the mark worldwide. Dkt. 146 at 7. A proper response, defendants argue, would explain plaintiff's licensing, royalties, cost sharing of marketing expenses, or compensation for subsidiaries using the mark. *Id.* at 8. Defendants ask plaintiff to supplement and "describe how its global branding

investment and strategy works with its subsidiaries." Dkt. 162 at 3. Plaintiff insists it already provided "a thorough and detail[ed] response." Dkt. 152 at 4. Plaintiff also highlights that "license," "royalties," "cost sharing," and "marketing expenses" appear nowhere in the interrogatory, and plaintiff invited defendant to issue additional requests about these topics in late 2024, but defendants declined. *Id.* at 5.

The Court finds plaintiff Takeaway sufficiently answered Interrogatory No. 4. Plaintiff described how it "uses and controls" its mark: plaintiff issues brand guidelines and restrictions, monitors online use by subsidiaries, and reviews templates and assets, but it also allows subsidiaries to manage their own marketing. Defendants seek information about what they believe constitutes control—royalties, licenses, marketing expenses, and compensation—but defendant did not ask about these topics or define control to elicit a more specific response. Plaintiff was "only obligated to answer the questions that were asked and [was] not required to guess that information beyond that which was specified was being sought." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 324 (N.D. Ill. 2005); *Medix Staffing Sols., Inc. v. Connected Care Health Servs., Inc.*, No. 20 C 2899, 2020 WL 13819915, at *4 (N.D. Ill. Dec. 10, 2020) (denying motion to compel supplemental interrogatory response when moving party "simply do[es] not ask for detail" sought). As plaintiff offered, defendants may request additional information in new interrogatories or through deposition testimony. "It is not the Court's responsibility to redefine and redraft discovery requests" to accomplish defendants'

discovery intent or goals. *Chapman v. First Index, Inc.*, No. 09 C 5555, 2012 WL 13207962, at *4 (N.D. Ill. Feb. 14, 2012). Accordingly, defendants' motion as to Interrogatory No. 4 is denied.

### iii.    Interrogatory No. 5 to Plaintiff Takeaway

> Interrogatory No. 5: Describe in reasonable detail the conception, selection, creation, development, and adoption of the Takeaway Home Mark, alone or in combination with any accompanying wording or designs, including describing how and why the mark was chosen, identifying all alternative marks considered, and identify the Plaintiff employees who participated in the conception, selection, creation, development, or adoption of the mark, and for each employee, his or her job title, job responsibility, and the time periods he or she has worked for Plaintiffs.

Dkt. 146, Ex. J at 11-12. Plaintiff responds that it began using a logo with a house, knife, and fork as early as 2003. The logo changed over time, but plaintiff used the three symbols and an orange color scheme continuously. Plaintiff's response provides an overview of how its marketing team updated the logo in 2013 and how it provided adoption guidelines to Grubhub in 2021. *Id.* at 12-14.

Defendants argue this response is deficient because (1) plaintiff did not describe "efforts to avoid or ignore infringement, its intent, and damages"; (2) plaintiff did not describe the development of subsidiary marks; and (3) plaintiff did not identify any employees. Dkt. 146 at 9-10. Plaintiff insists it responded to the request, as written, in reasonable detail and further argues that the conduct of its foreign subsidiaries is not relevant to the U.S. trademark dispute at the center of this case. Dkt. 152 at 6-7.

The Court agrees with each side in part. First, as defendants argue, plaintiff's response omits information about employees who developed the mark. Plaintiff does not address this argument. The Court finds that the request is relevant to the trademark infringement claim, particularly the consumer confusion factors. Accordingly, plaintiff shall supplement its response with a list of employees, their job titles, and the time periods they worked for plaintiff. The Court will not order further supplementation. To the extent defendants argue plaintiff's response lacks specificity, the Court finds plaintiff has reasonably described the "conception, creation, development, and adoption" of the Takeaway Home Mark. Defendants did not ask plaintiff about its efforts to avoid infringement, its intent, or its damages. Therefore, plaintiff need not supplement its answer with the details defendants now request. *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. at 324.

Next, to the extent defendants seek information about plaintiff Takeaway's subsidiaries, plaintiff need not supplement its response. As the Court understands it, plaintiff's only American subsidiary is Grubhub. *See* Dkt. 146, Ex. J at 9-10. Plaintiff reasonably described Grubhub's adoption of the Takeaway Home Mark. And plaintiff need not provide information about the creation or development of its mark abroad. As discussed in Section III.A.i., the Lanham Act is not extraterritorial and does not regulate conduct in foreign commerce. Further, defendant fails to explain how the development of marks in foreign countries is relevant to its claims about an American trademark. Accordingly, defendants' motion as to Interrogatory

No. 5 is granted in part and denied in part. By May 16, 2025, plaintiff shall supplement its response with employee information.

### iv. Interrogatory No. 6 to Plaintiff Takeaway

Interrogatory No. 6: Describe each trademark search, investigation, research, or any other inquiry conducted concerning the availability to use or register a mark including the Takeaway Home Mark, alone or in combination with any accompanying or allegedly distinguishing wording or designs, including the response or outcome of the search, investigation, research, and/or inquiry and identifying the persons involved.

Dkt. 146, Ex. J at 14. Plaintiff objects to the interrogatory as overly broad, unduly burdensome, and irrelevant. Notwithstanding its objections, plaintiff states any responsive information is protected by attorney-client privilege or work product doctrine. *Id.* at 14-15. Defendants challenge plaintiff's privilege claims and argue they need information about plaintiff's abandoned trademark application in the United States as well as trademark searches completed when acquiring non-American entities. Dkt. 146 at 10. Plaintiff argues it should not be compelled to supplement because (1) the interrogatory does not request information about trademark applications; (2) foreign trademark searches are not relevant; and (3) it has no nonprivileged information that is responsive to the request. Dkt. 152 at 7-8. The Court disagrees in part.

Plaintiff cannot avoid providing a substantive answer with boilerplate objections and a blanket invocation of privilege. *Fudali v. Napolitano*, 283 F.R.D. 400, 403 (N.D. Ill. 2012) (explaining the "uninformative litany" that a request is overbroad, burdensome, and not relevant is insufficient); *SFG, Inc. v. Musk*, No. 19-

CV-02198, 2021 WL 12094156 (N.D. Ill. Mar. 3, 2021) (finding nonmoving party must respond to discovery requests about trademark application when it did not establish privilege through eight-factor test). It is undisputed that plaintiff filed a United States trademark application, which included searching for similar marks. *See Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023) (providing overview of plaintiff's application). It follows then, that plaintiff indeed possesses non-privileged, responsive information. *Dr Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2015 WL 8777633, at *4 (N.D. Ill. Dec. 15, 2015) (the fact of a trademark search and the results are not privileged). To be sure, defendants could have drafted this interrogatory to directly inquire about plaintiff's trademark application, and defendants' specificity (or lack thereof) is a recurring issue underlying the discovery disputes in this case generally. But unlike Interrogatory No. 4—where the Court found plaintiff fulfilled its obligation to answer the question asked and was not obligated to guess at unspecified details— here, plaintiff has not attempted to answer the question asked. Accordingly, by May 16, 2025, plaintiff shall supplement its response to Interrogatory No. 6. Its response, however, shall be limited to trademark inquiries in the United States, for the reasons already discussed.

### v. Interrogatory No. 10 to Plaintiffs Takeaway and Grubhub

<u>Interrogatory No. 10</u>: Identify all Persons who were or are responsible for, or participated in, the marketing or advertising of any goods or services offered for sale, sold, distributed, or rendered, or intended to be offered for sale, distribution, or rendering, under or in connection with the Takeaway Home Mark, alone or in combination with any accompanying or allegedly distinguishing wording or designs.

Dkt. 146, Ex. J at 18-19, Ex. L at 10. Plaintiffs object to the geographic and temporal scope of the request, arguing it is overly broad and could encompass "a substantial portion" of their employees. Nevertheless, Plaintiff Takeaway lists the names of five "key stakeholders" and Plaintiff Grubhub lists the names of ten "key stakeholders." Defendants argue the lists are insufficient and demand information about all employees and third parties engaged in marketing so they may identify potential email custodians. Plaintiffs respond that defendants' request is unduly burdensome and disproportionate to the needs of the case.

The Court finds plaintiffs' responses are deficient, and the request is overly broad. First, plaintiffs provide no explanation of how they define a "key stakeholder," how they chose the stakeholders listed, or why their list is representative and sufficient. This is facially inadequate. At the same time, defendants' request is nearly boundless, asking for anyone remotely involved in the marketing of goods and services with plaintiffs' mark. Defendants do not articulate how "all persons"—regardless of position, knowledge, seniority, current employment status, or time period employed by plaintiffs—is proportional to the needs of the case. The information requested in this interrogatory is relevant to the trademark infringement claim and defendants are entitled to its discovery, but a more targeted approach is warranted. Accordingly, the parties shall meet and confer to narrow the request. By May 9, 2025, the parties shall file a joint status report indicating whether Interrogatory No. 10 is still in dispute.

### vi.     Interrogatory No. 4 to Plaintiff Grubhub

<u>Interrogatory No. 4</u>: Describe how Grubhub Inc. has used and controlled the use of the Takeaway Home Mark, alone and in combination with any other accompanying or allegedly distinguishing wording or designs, such as the GRUBHUB Mark or SEAMLESS Mark.

Dkt. 146, Ex. L at 8. Plaintiff Grubhub states it "has always used the Takeaway Home Mark together with either the GRUBHUB Mark or SEAMLESS Mark in all consumer-facing marketing, advertising, promotional and sales materials as well as in all materials communicated to Plaintiff's corporate partners, vendor network, and drivers network." *Id.* Grubhub clarifies that Takeaway "has strict brand guidelines dictating that the Takeaway Home Mark and the GRUBHUB Mark can never be apart and must always be used together." *Id.* Defendants assert this response is deficient because plaintiff does not identify uses of the Takeaway Home Mark alone, but plaintiff stated the mark is never used alone. Defendants do not articulate any basis to believe this statement is inaccurate or incomplete.[1] *See Mendez*, 2020 WL 4736399, at *5, *8 (denying motion to compel when moving party does not articulate a basis to believe response was wrong). Defendants also argue

---

[1] Defendants insist that plaintiff's categorical statement that it never uses the Takeaway Home Mark alone is inconsistent with its statement that it uses the Takeaway Home Mark together with the Grubhub and Seamless marks "in all consumer-facing marketing, advertising, promotional, and sales materials as well as in all materials communicated to Plaintiff's corporate partners, vendor network, and drivers network." Dkt. 162 at 4. Defendants apparently believe that by specifying when plaintiffs use the marks together (in consumer facing and non-consumer facing materials) they must be omitting examples of using the marks alone. The Court disagrees. Plaintiff's statement that it never uses the marks alone is consistent with its statement that in all consumer and non-consumer facing materials the marks always appear together. The latter simply adds context to fully answer defendants' interrogatory. Defendants point to no other use of the marks to support their belief that plaintiff's answer is inaccurate.

plaintiff's response is deficient because plaintiff does not disclose Takeaway's guidelines, but the interrogatory does not ask plaintiff to do so. *See Medix Staffing Sols., Inc.*, 2020 WL 13819915, at *4 (denying motion to compel when moving party "simply do[es] not ask for detail" sought). For these reasons, the Court finds no supplementation is required, and defendants' motion as to Interrogatory No. 4 to Grubhub is denied.

### vii.    Interrogatory No. 5 to Plaintiff Grubhub

> Interrogatory No. 5: Describe in reasonable detail the conception, selection, creation, development, and adoption of the Takeaway Home Mark, alone and in combination with any accompanying wording or designs, including describing how and why the mark was chosen, identifying all alternative marks considered, and identify the Plaintiff employees who participated in the conception, selection, creation, development, or adoption of the mark, and for each employee, his or her job title, job responsibility, and the time periods he or she has worked for Plaintiffs.

Dkt. 146, Ex. L at 9. Plaintiff Grubhub's response, supplemented after the filing of defendants' motion to compel, provides the following information: Grubhub was not involved "in any aspect" of the selection, creation, or development of the Takeaway Home Mark. Grubhub received brand guidelines from Takeaway in June 2021 and, over the next month, applied the guidelines to its Grubhub and Seamless marks. Grubhub identifies seven employees who managed and facilitated the adoption of the marks, providing their job titles and dates of employment. Finally, Grubhub identifies third-party vendors who assisted with branding, and it promises to produce documents containing other involved employees and contractors. Dkt. 152, Ex. 1 at 9-11.

14

Defendants maintain Grubhub's response is incomplete, but on this record the Court disagrees. Aside from requesting ESI custodians, defendants do not articulate what additional information they seek from Interrogatory No. 5 or otherwise explain why the response is deficient. Dkt. 162 at 4. The parties shall meet and confer on potential ESI custodians, but given plaintiff's substantial supplementation already, defendants' motion as to Interrogatory No. 5 is denied as moot.

### viii.   Interrogatory No. 8 to Plaintiff Grubhub

> Interrogatory No. 8: Identify each and every instance in which any Plaintiff has used the Takeaway Home Mark, alone or in combination with any accompanying or allegedly distinguishing wording or designs, in the United States together with any third-party trademark, service mark, trade name, corporate name, product or service name, domain name, or social media handle on any advertising, marketing, or promotional material.

Dkt. 146, Ex. L at 12. Plaintiff argues the interrogatory is overly broad and unduly burdensome because it has no temporal limitations and "Plaintiff cannot reasonably identify every single instance requested" because it uses the Takeaway Home Mark with brands throughout the United States on its "website, app, and social media platforms, advertising on social media platforms, out-of-home print and digital advertising, digital advertising, direct response, television, and e-mail." *Id.* at 13. Defendants clarify that they seek examples of, and information about, when Grubhub co-branded or partnered with "grocers, convenience stores, and others." Dkt. 162 at 5.

15

The Court agrees with plaintiff that Interrogatory No. 8 is overly broad. The parties shall meet and confer to narrow the substantive and temporal scope of Interrogatory No. 8. By May 9, 2025, the parties shall file a joint status report indicating whether Interrogatory No. 8 remains in dispute.

### ix.  Interrogatory No. 9 to Plaintiff Grubhub

Interrogatory No. 9: Describe in reasonable detail Plaintiffs' efforts to discontinue or phase out the SEAMLESS Marks and any expected phase out date.

Dkt. 156, Ex. L at 13. Plaintiff states it "has taken steps to alter the Seamless Marks and now presents these marks with the wording 'by Grubhub' or 'Powered by Grubhub' … While Plaintiff does not currently have a plan and timeline to fully discontinue the Seamless brand or the use of the Seamless Marks as modified … it is continuing to evaluate its best course of action." *Id.* at 14. Defendants argue plaintiff's answer is too vague, and plaintiff must be compelled to respond "fully and completely." Dkt. 162 at 5. Defendants, however, fail to clarify what information they seek. Plaintiff indicates it is phasing out the Seamless Mark by adding wording that references Grubhub, but it does not have an expected phase out date or formed plan. Plaintiff answered the interrogatory as written and there is nothing more to compel. *See Mendez*, 2020 WL 4736399, at *5.

### x.  Request for Admission No. 3 to Plaintiff Grubhub

Defendants ask plaintiff to "[a]dmit that Grubhub offers online ordering and delivery of groceries in major markets in the United States." Dkt. 146, Ex. N at 6. Plaintiff objects to the term "major markets" as vague, subjective, and undefined;

16

however, it "admits that in addition to offering online ordering and delivery of food and meals from restaurants, as of 2024, Plaintiff also offers online ordering and delivery of groceries in the United States." *Id.* Defendants argue plaintiff's response fails to comply with Rule 36 and uses an "inaccurate and unrequested time frame." Dkt. 146 at 14. Plaintiff responds that it appropriately qualified its admission and explained the basis of its objection. Dkt. 152 at 14. The Court agrees.

Plaintiff's response "fairly meets the substance of the requested admission" and clarifies what part of the request is true, namely that it offers online ordering and delivery of groceries in the United States. *See Resurrection Healthcare v. GE Health Care*, No. 07 C 5980, 2009 WL 10742078, at *1 (N.D. Ill. July 24, 2009) (explaining Rule 36 requirements). Additionally, and contrary to defendants' position, Rule 36 allows plaintiff to qualify its response with a specific time frame. *Buchanan*, 2016 WL 7116591, at *6. Although defendants insist the response is inaccurate because plaintiff allegedly offered groceries before 2024, "a motion regarding sufficiency is not the proper vehicle to resolve whether a response is factually correct." *Resurrection Healthcare*, 2009 WL 10742078, at *2. Accordingly, defendants' motion as to RFA No. 3 is denied.

### xi. Request for Admission No. 5 to Plaintiff Grubhub

Defendants ask plaintiff to "[a]dmit that Grubhub has advertised, sold, offered for sale, distributed, or rendered delivery of Kroger products in the United States." Dkt. 146, Ex. N at 7. Plaintiff "admits that a small number of its vendors list and sell products with 'Kroger' in their name on Plaintiff's platforms,"

17

explaining that while third-party restaurants and vendors sell items, plaintiff does not directly sell and advertise Kroger products. Dkt. 152 at 15. Defendants argue plaintiff's answer does not conform to Rule 36 because it adds "a vague qualifier." Dkt. 146 at 15. The Court disagrees. Again, plaintiff is permitted to qualify its answer. Fed. R. Civ. P. 36(a)(4). Further, the Court finds plaintiff's qualification is reasonable considering defendants' broadly worded request. *See United States ex rel. Gill v. CVS Health Corp.*, No. 18 C 6494, 2024 WL 3028958 (N.D. Ill. June 17, 2024) (finding RFAs without time limit "hopelessly overbroad"). Requests to admit should "be simple and direct," and used to confirm "facts already known by the seeker," to "narrow the issues to be resolved at trial." *Resurrection Healthcare*, 2009 WL 10742078, at *1. Here, defendants apparently seek to prove likelihood of confusion factors, Dkt. 146 at 15, but these are disputes to be resolved *at* trial. Defendants' motion as to RFA No. 5 is denied.

### B. Defendants' Motion to Compel Michael Maloney

#### i. RFP Nos. 1-9

Defendants seek documents and communications related to Mr. Maloney's attempts to buy Grubhub after his resignation. Defendants repeatedly assert that "Mr. Maloney had to analyze" plaintiffs' businesses, plaintiffs' marks, and defendants' mark when Mr. Maloney prepared his bids. Dkt. 148. Based on this assumption, defendants request documents concerning (1) "the strength, reputation, value, importance, impact, perception, strategy, branding, market research, study, survey, analysis, perception, recognition, changes, financial performance, or market

influence" of the marks; (2) the ownership, enforcement, protection, or use of the marks; (3) Grubhub's acquisition; (4) negotiations and communications about the marks; (5) how the Takeaway Home Mark benefits Grubhub; (6) "any analysis or evaluation of goods or services offered … in connection with" the mark; (7) communications about Grubhub's acquisition; (8) the acquisition or potential acquisition by an entity other than Takeaway; and (9) "all documents and things concerning any defendant, any defendant's trademark, this action, or any trademark dispute concerning any of the marks at issue." Dkt. 148-1 at 13-14. Defendants argue that Mr. Maloney's "business outlook" regarding Grubhub's acquisition and the marks at issue is relevant to its claims and damages.

The Court finds RFP Nos. 1-9 would impose an undue burden on Mr. Maloney within the meaning of Rule 45(d). First, aside from conclusory statements, defendants have not articulated how the documents requested are relevant to the claims or damages in this case. *See, e.g.*, Dkt. 148 at 5 ("His underlying analyses, evaluations, and personal communications are directly relevant to the issues in this case."); *id.* at 8 ("[T]he requested materials are relevant evidence which will support Defendants' allegations and damages and be used to refute Plaintiffs' contrary views."). From defendants' brief, the Court can only surmise defendants believe that Mr. Maloney values Grubhub's business and mark differently than plaintiffs, and therefore defendants want to use his perspective to rebut plaintiffs' theory of the case. But defendants do not explain, and the Court does not otherwise find Mr. Maloney's opinion relevant to (1) whether

19

plaintiffs' mark in fact infringes on defendants' mark, or (2) calculating actual damages. Notably, defendants fail to cite any cases where a former employee's "insightful financial analyses" or "business outlook" is relevant to a trademark dispute.

Second, to the extent defendants seek factual information about the marks or the acquisition—as opposed to Mr. Maloney's analysis and evaluation of the same—this information is better suited to party discovery. Because defendants have not demonstrated that they cannot obtain the information from plaintiffs, the subpoena requests are improper. *Earthy, LLC v. BB&HC, LLC*, No. 16 CV 4934, 2017 WL 4512761, at *3 (N.D. Ill. Oct. 10, 2017).[2]

Finally, the Court finds RFP Nos. 1-9 are overly broad. The requests contain no temporal limit and lack specificity. For example, defendants' RFP No. 1 does not "target a particular subject matter." *Earthy, LLC*, 2017 WL 4512761, at *3. Instead, defendants seek "all documents and things concerning the strength, reputation, value, importance, impact, perception, strategy, branding, market research, study, survey, analysis, perception, recognition, changes, financial performance, or market influence of any of the Marks at Issue." Likewise, defendants' request for "all documents and things concerning any Defendant, any Defendant's trademark, this Action, or any trademark dispute concerning any of the Marks at Issue," Dkt. 141-1

---

[2] The Court notes that Mr. Maloney attested he has no documents relating to the marks or Grubhub's acquisition in his possession, custody, or control. Dkt. 161-1. Defendants now agree not to pursue these documents, but do not clarify which requests are abandoned. Dkt. 171 at 5. Accordingly, the Court clarifies that, regardless, under Rule 34 the Court cannot compel Mr. Maloney to produce documents that are not in his possession, custody, or control.

at 14, could "encompass an unlimited range of information." *Earthy, LLC*, 2017 WL 4512761, at *3 (finding subpoena request for all communications and documents concerning a party to be overly broad); *Little*, 2020 WL 1939358, at *6. For all these reasons, the Court denies defendants' motion as to RFP Nos. 1-9.

### ii. RFP Nos. 10-12

Defendants seek all non-privileged documents concerning plaintiffs' other lawsuits, investigations, or allegations related to trademark infringement and unfair or deceptive business practices. Defendants argue the requested documents "would be used to prove a pattern" of wrongdoing, and "intent, knowledge, absence of mistake, and lack of accident." Dkt. 148 at 10. Mr. Maloney argues (1) the requests are not relevant; (2) he does not possess any non-privileged information; and (3) the requests should be issued to plaintiffs instead. Dkt. 161 at 9.

The Court agrees with Mr. Maloney. Defendants do not explain how any alleged pattern of misconduct is relevant to a claim or defense in this litigation.[3] While intent is a factor in the likelihood of confusion test, the intent analysis focuses on whether plaintiffs intend to palm off their goods and services as defendants' goods and services. *See Grubhub Inc*, 80 F.4th at 856-57. Evidence in this context can include whether plaintiffs knew of defendants' mark or tried to

---

[3] The Court can only presume that defendants intend to invoke Federal Rule of Evidence 404 when arguing for evidence proving intent, knowledge, motive, opportunity, absence of mistake, and lack of accident. Dkt. 148 at 10. However, simply noting that a certain type of evidence (here 404(b)) may be admissible, does not make it relevant. Defendants, again, fail to make any connection to relevance to this case or in trademark infringement cases generally.

confuse consumers about plaintiffs' and defendants' products.[4] *Id.* Defendants do not articulate how any lawsuits or investigations into plaintiffs' conduct with other businesses relates to any intended conduct towards its *own* mark or business. Even if defendants articulated the relevance of their requests, the Court finds the requests are improper for Mr. Maloney because he is not a party to this case. Defendants do not assert that they first sought discovery about other lawsuits and allegations from plaintiffs (nor in making this observation does the Court find that such an inquiry would be appropriate). Accordingly, the Court will not enforce the subpoena. *Earthy, LLC*, 2017 WL 4512761, at *3. Defendants' motion as to subpoena RFP Nos. 10-12 is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to compel plaintiffs is granted in part and denied in part, and defendants' motion to compel Mr. Maloney is denied. By May 9, 2025, the parties shall meet and confer and file a joint status report indicating whether Interrogatory No. 10 to Takeaway and Grubhub, and Interrogatory No. 8 to Grubhub remain in dispute. By May 16, 2025, plaintiff Takeaway shall supplement its responses to Interrogatory Nos. 5 and 6 in accordance with this order. Also, by May 16, 2025, the parties shall file a joint status report setting forth what additional discovery has been completed, what

---

[4] The intent analysis is similar for defendants' state law claims. *See* 765 ILCS 1036/65 (asking whether infringer "willfully intended to trade on the owner's reputation or to cause dilution of the [owner's] famous mark").

discovery remains, and whether any discovery disputes require the Court's attention.

The Court concludes with a note about outstanding disputes and discovery going forward. The parties' March 14, 2025 joint status report indicates the parties dispute approximately 40 of defendants' requests for production. Several of the disputed RFPs overlap with the interrogatories discussed in this order. *See, e.g.*, Interrogatory No. 5 to Takeaway and RFP No. 3 to Takeaway. The parties are directed to meet and confer regarding the disputed RFPs with the rulings here in mind. In particular, the parties shall consider the Court's ruling on the scope of relevance, and its admonishment of overly broad requests and unnecessarily narrow or unexplained responses. The Court expects the parties to continue engaging in meaningful meet and confers that resolve disputes without Court intervention.

**So Ordered.**

**Jeannice W. Appenteng**
**United States Magistrate Judge**

Date: 4/24/2025

23